KATE HINCKLEY, APPELLANT, V. CHARLES D. JEWETT, APPELLEE.

FILED APRIL 9, 1910. No. 15,971.

1. Appeal: EVIDENCE: HARMLESS ERROR. The admission of incompetent or immaterial testimony furnishes no ground for the reversal of a judgment if it is not prejudicial to the rights of the complaining party.

2. Marriage: HEARSAY EVIDENCE. Hearsay evidence, such as the general understanding and talk in the community in which the parties reside, cannot be received to establish a contract to marry.

3. Instructions examined, their substance set out in the opinion, and *held* to have been properly given.

4. New Trial: CONFLICTING EVIDENCE. A conflict of evidence, however great, is not of itself a sufficient basis for a motion for a new trial upon the ground of accident or surprise.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Greene & Greene,* for appellant.

*George W. Berge* and *Meier & Meier, contra.*

BARNES, J.

This action was based on an alleged breach of promise of marriage. It was tried to a jury in the district court

for Lancaster county.   Defendant had the verdict and judgment, and the plaintiff has appealed.

So far as the issues are concerned, the plaintiff's petition was in the ordinary and approved form in such cases, while the answer was in effect a general denial.

Plaintiff assigns error in the admission of oral evidence of the contents of a certain letter alleged to have been written and mailed by the defendant to the plaintiff from Waverly, Nebraska, to her Lincoln address.   It is contended that no sufficient foundation was laid to authorize the court to receive this testimony.   The evidence upon that point was, in substance, that defendant addressed the letter to the plaintiff at Lincoln, Nebraska; that he thought it was put in the mail box at the farm, or in the mail at Waverly, either by himself or some member of his family: the defendant being unable to remember whether he mailed it or gave it to some member of the family to mail.   It is also contended that the testimony fails to disclose that any stamp was placed upon the letter, or, as a matter of fact, that it was ever deposited for carriage in the United States mail.   We find that there is no necessity for determining the sufficiency of the foundation for the introduction of the contents of the letter, for an examination of the record discloses that its contents, as stated by the defendant, favored the plaintiff's contention, and was of no assistance to the defense. So far as we are able to ascertain from the bill of exceptions, the statement of the contents of the letter was as follows: "Waverly, Neb., May —, 1906. Miss Kate Hinckley, Lincoln, Neb.   Dear Girl: I am enjoying the cool fresh air of the country and am getting rested. I will not be in for a while, or very soon.   C. D. Jewett."

It thus appears that this evidence could not have been prejudicial to the rights of the plaintiff.   Indeed, the familiar manner in which the defendant addressed her might have caused the jury to believe that a promise of marriage existed between them, and therefore it tended

33

to support her theory of the case. It has been frequently held that the reception of incompetent evidence where of such character that it could not in any view of the case be prejudicial to the rights of the complaining party, affords no ground for a new trial. On this point it is further contended by the plaintiff that the defendant, without any proper foundation being laid therefor, testified to the contents of other letters he had written to her, and that she had written to him. We have carefully read the bill of exceptions and are unable to find any evidence of the contents of any letters alleged to have passed between the parties other than the one above set forth, and for the foregoing reasons, the plaintiff's contention on this point cannot be sustained.

It is also contended that the court erred in excluding the evidence of certain witnesses offered by the plaintiff to the effect that it was the understanding in the community, and in the society in which the parties moved, that the plaintiff was going back east to get married, and that such was the general talk at the time she went from Lincoln to visit her sister at Pontiac, Michigan. No authorities are cited in support of this contention, and this evidence would seem to come under the general and well-known rule excluding hearsay testimony.

It is also insisted that, from the beginning of the cross-examination of the plaintiff to its conclusion, the rules with reference to such an examination were violated by counsel with the sanction of the court. We have carefully read the evidence, and cannot agree with counsel upon this proposition. The cross-examination seems to have been conducted in an orderly and seemly manner, without any attempt to humiliate or embarrass the plaintiff, but with the view to bring out the truth in regard to the relations which had existed between the parties to the action.

It is further claimed that the plaintiff, from the beginning to the end of the trial, was subjected to constant insults and humiliation at the hands of counsel for the

defendant, and that her witnesses received no better treatment, and therefore counsel for the defendant was guilty of such improper conduct as would require us to grant a new trial. We cannot agree with counsel upon this point. On the other hand, it seems to us that counsel for the defendant conducted himself in a seemly manner, and that his treatment of the plaintiff and her witnesses is not deserving of criticism. In fact, the trial appears to have been conducted in an orderly and proper manner, and this contention must therefore be overruled.

Plaintiff complains of the second paragraph of the court's instructions to the jury, which reads as follows: "You are instructed that to constitute a contract to marry there must be a meeting of the minds of the contracting parties; that is, there must be an offer on the part of one and an acceptance on the part of the other. Such contract may be unspoken or unwritten, but enough must appear to show that the minds of the parties met, and fix the fact that the parties are to marry as clearly as if put in formal words of offer and acceptance." No authorities are cited in support of the plaintiff's criticism upon this instruction, and to our mind it fairly states the law upon that point.

Error is also assigned for the giving of the sixth and eighth paragraphs of the instructions. By the sixth instruction the jury were told, in substance, that the defendant in his answer had made no allegations charging the plaintiff with previous loose conduct; that, in the absence of allegations to the contrary, the law presumes the parties to a marriage contract have each satisfied themselves in regard to the other's character; that any evidence upon this point should only be considered for the purpose of determining the question as to whether or not the parties entered into an agreement to marry. This instruction is severely criticised by the plaintiff for the reason that there was no evidence introduced on the trial on which it could be based. It is true that the record contains no evidence of meretricious conduct on the part

of the plaintiff, but the defendant testified to certain transactions from which the jury might assume that he never promised to marry her, and it was proper for the court to state to the jury that such evidence could only be considered for that purpose.

By the eighth instruction the jury were told that evidence had been admitted from both the plaintiff and the defendant showing their relationships and the facts and circumstances concerning the same; that the evidence bearing upon the question as to whether or not the plaintiff entertained other suitors and had relationships with other men, during the time she claims to have been engaged to the defendant, should only be considered by them as bearing upon the question whether or not she then had a marriage engagement with the defendant as alleged, and it is insisted that there was no evidence upon which to base this instruction. We do not so understand the record. While it is not claimed that the plaintiff ever had any meretricious relationships with other men, still there is evidence in the record which tends to show that she had other company, at least to some extent, and therefore the instruction was a proper one. In any event, it cannot be claimed that either of these instructions could in any manner prejudice the plaintiff's rights.

Finally, it is contended that the plaintiff should have been granted a new trial on account of accident and surprise. It is argued that a litigant has a right to expect that his adversary will not testify falsely concerning any matter about which there is no room for an honest mistake, and it is insisted that the defendant in this case wilfully testified falsely, and that a new trial should be granted for that reason. As we read the record, there is very little conflict in the evidence. The parties agreed upon nearly everything which occurred during the time that the defendant was paying his attentions to the plaintiff. The only real disagreement between them was upon the main question as to whether or not the defendant ever promised to marry the plaintiff. Upon this point it was

to be expected that the parties would disagree, and by his answer the defendant had given notice to the plaintiff that he would testify that no promise of marriage ever existed between them, and the fact that he did so testify is no reason for granting a new trial. It seems clear that this case was fairly tried; that it was conducted in a seemly and orderly manner; that the only question in the case was one for the determination of the jury, and that question was fairly submitted to them, and under well-established rules we are bound by their verdict.

The judgment of the district court is therefore

AFFIRMED.

FAWCETT, J., not sitting.